THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | 3:21-CR-206 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| MIGUEL EDUARDO ROSARIO, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

#### I. INTRODUCTION

Presently before the Court is Defendant Miguel Eduardo Rosario's Motion to Suppress Physical Evidence (Doc. 37). The five-count Indictment (Doc. 1) charges Defendant with one count of conspiracy to distribute controlled substances resulting in serious bodily injury or death in violation of 21 U.S.C. § 846, two counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and one count of firearms conspiracy in violation of 18 U.S.C. § 924(o). (*See* Doc. 1). The present Motion requests the Court to "conduct a suppression hearing, including a *Franks* hearing, and suppress all physical evidence seized from the Facebook account belonging to Miguel Eduardo Rosario." (Doc. 37 at 5).

#### II. FACTUAL BACKGROUND

Trooper Jonathan Bailey of the Pennsylvania State Police sought the search warrant at issue in this case during his investigation into the mixed drug toxicity death of Nicholas

Correa on March 24, 2019.  (Search Warrant, Doc. 38-1, Ex. 1 at 1).  Trooper Bailey

identified the "items to be searched for and seized" as:

> Any and all text messages/posts, photos, video/audio messages, and phone calls made to/from Miguel ROSARIO (DOB: 05/28/86) and Nicholas CORREA (DOB: 10/06/90) through the Facebook, Inc. accounts of https://www.facebook.com/deuce.dr212, https://www.facebook.com/Rdgpapi, https://www.facebook.com/nick.correa.96 between 12/01/18 to present, related to this death investigation.  The associated IP addresses that were utilized to post these messages, posts, and video/audio messages on the above listed accounts.

(*Id.*).

In support of the search warrant, Trooper Bailey submitted an affidavit of probable

cause.  (Doc. 38-1, Ex. 1 at 2-3).  The affidavit reads:

> I am a duly sworn Police Officer, employed by the Pennsylvania State Police, and currently assigned to the Stroudsburg Criminal Investigation Unit.  As such, I am empowered to conduct investigations into the violation of the laws of this Commonwealth, including any violation of Title 18, the Crimes Code.  During the course of such investigations, I am authorized to apply for, obtain, and serve search warrants, make seizures and arrests.  Your affiant has been a member of the Pennsylvania State Police since August 18th of 2014 and as such [has] been involved in numerous criminal investigations.    These investigations have resulted in the seizure of evidence, illegal drugs and documents and the arrest of numerous offenders.
>
> Your affiant has been assigned to this investigation.  This affidavit is based in part upon my conversations with other law enforcement agents, my examination of reports, and records.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.
>
> On 03/24/19 at approx. 1110 hrs. PSP-Stroudsburg received an emergency call from 101 Water Hill Lane, Smithfield Township, Monroe County regarding an unresponsive 28 YOA W/H-M.   The male was identified as Nicolas CORREA.  I responded to the residence to investigate.  Upon my arrival, I

2

observed the victim lying on the driveway of the residence. The victim was lying alongside the driver side of a black Toyota Corolla. I observed Bushkill EMS personnel tending to the victim at the scene.

I was advised by Bushkill EMS that CORREA was unresponsive upon their arrival and the Monroe County Coroner's Office was notified. On 03/24/19 at 1150 hrs. the Monroe County Coroner pronounced CORREA deceased. Interviews with the family determined that CORREA had a history of substance abuse, including cocaine, subscribed opiates, and heroin. CORREA's family located his Samsung Galaxy J7 cellular phone and provided access to his Google location within the past 24 hours and previous messages between "Deuce Rosario" and CORREA from December 2018-March 2018[1] were they discussed drug transactions and CORREA agreeing to meet him at his location. CORREA's Facebook account was identified as https://www.facebook.com/nick.correa.96. On 03/25/19 Preservation requests were submitted for both Facebook accounts. The messages from CORREA related, "Yo, do you have that jaunt?", "I got the cash on me.", "Let me know when you're ready."

The victim's Google location indicated that on 3/24/19 between 0000 hrs.-0030 hrs. CORREA drove from 101 Water Hill Lane to the Wawa Convenience store at 515 Lowland Road in Hamburg, PA. Prior to visiting the Wawa convenience store, the victim contacted "Deuce Rosario" through Facebook messenger.

On 03/25/19 I attended the autopsy at Lehigh Valley Hospital-Cedar Crest. The cause of death was determined to be by mixed toxicity with Cocaine, Heroin, Fentanyl, and prescription medication metabolites being found in CORREA's blood.

On 03/25/19 at approx. 1130 hrs. I traveled to the Wawa convenience store located at 515 Lowland Road, Tilden Township, Berks County. I spoke with Store Management regarding this incident. I requested the surveillance video from the Wawa convenience store between 000hrs.-0030 hrs. on 03/24/19. While reviewing the surveillance video I identified "Deuce Rosario" as Miguel ROSARIO. I observed Miguel ROSARIO arriving at the Wawa convenience store in03/24/19 at 0015 hrs. in a black Crown Victoria labeled "Rent-a-cab". This cab was labeled as "96". The victim arrived shortly afterwards in the black

---

[1] Trooper Bailey's affidavit states that he observed messages between Defendant and Mr. Correa from "December 2018 to March 2018." (Doc. 38-1, Ex. 1 at 2). It is clear that Trooper Bailey made a typographical error and intended to write March 2019.

Toyota Corolla. Both vehicles are parked in-between the gas pumps of the Wawa. ROSARIO exits the cab and meets the victim in front of the gas pumps. The victim and ROSARIO enter the Wawa store where ROSARIO makes a small purchase. ROSARIO and the victim exit the store and they both sit inside the victim's vehicle. The victim is seated in the driver seat and ROSARIO is seated in the passenger seat. ROSARIO and the victim remain in the vehicle for a approx. one minute. The victim exits the vehicle and enters the Wawa convenience store bathroom. After entering the store ROSARIO exits the victim's vehicle and stands beside the Rent-a-cab. The victim exits the store and exchanges an item with ROSARIO. ROSARIO and CORREA leave the Wawa store separately. CORREA was found unresponsive in front of his residence several hours later due to his drug toxicity.

As of 06/12/19 an internet query of the Deuce Rosario Facebook account has been deleted from the https://www.facebook.comdeuce.dr212 account and reposted under https://www.facebook.com/Rdgpapi/.

There is reason to believe that Miguel ROSARIO is currently conducting drug transactions through this updated Facebook Account.

I am aware that cellular telephones are hand held devices capable of storing large amounts of digital media. I am aware that digital media, including text messages, can be saved on cellular telephones. Also, cell phones are capable of storing contacts, such as telephone numbers and e-mail addresses. Recent telephone calls can also be reviewed and the length of the call and the number dialed are saved. I am also aware that cellular telephones are hand held devices capable of storing large amounts of digital media. I am aware that digital media, including text messages, can be saved on cellular telephones. Also, cell phones are capable of storing contacts, such as telephone numbers and e-mail addresses. Recent telephone calls can also be reviewed and the length of the call and the number dialed are saved.

Through my training and experience that electronic devices including cellular telephones can be forensically examined and digital media extracted from a device by trained investigators using specialized equipment. Digital media that is downloaded from a device that can be reviewed and used to assist in criminal investigations. Through my training and experience, heroin usage and purchases are coordinated through contacts via cellphones and various other media.

4

I respectfully request that a search warrant be issued authorizing a request of Miguel Rosario and Nicolas CORREA's Facebook accounts.

(Doc. 38-1, Ex. 1 at 2-3).

On June 27, 2019, the Honorable Stephen Higgins, Judge of the Court of Common Pleas in Monroe County, Pennsylvania signed the search warrant, authorizing the search of the Facebook accounts listed in the warrant and the seizure of the corresponding account data. (Doc. 38-1, Ex. 1).

Facebook complied with the warrant and sent data from the two identified accounts sought by the search warrant to the Pennsylvania State Police. (Doc. 38 at 6). The data turned over by Facebook consists of thousands of pages of communications, messages, and other records that the Pennsylvania State Police, together with the United States Attorney's Office for the Middle District of Pennsylvania, used to build the instant criminal case against Defendant.

### III. ANALYSIS

The Fourth Amendment guarantees

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"

*United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S.

213, 238 (1983)).  Probable cause is a "fluid concept" that is fact-specific and "not readily, or even usefully, reduced to a neat set of legal rules."  *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (quoting *Gates*, 462 U.S. at 232).

Where, as here, a court is presented with a challenge to a judge's probable cause determination in the issuance of a warrant, it must limit its review to an inquiry of whether "the magistrate had a substantial basis for concluding that probable cause existed."  *Id.* at 1055; *see Gates*, 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (citations omitted)).  The court must read the affidavit of probable cause submitted in support of the search warrant in its entirety and "in a commonsense and nontechnical manner."  *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citing *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir 1993)).  "In making this determination, the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'"  *Id.* (quoting *Jones*, 994 F.2d at 1055).

Defendant makes several arguments in his Motion to Suppress Physical Evidence. First, Defendant contends that the "search warrant is invalid on its face" because it lacks particularity.  (Doc. 38 at 12).  Next, Defendant argues that "[t]he affidavit contains false statements that should also be redacted and omissions that should be corrected following a *Franks* hearing."  (*Id.* at 16).  The Defendant also argues that "Trooper Bailey's affidavit

6

does not support his overly broad request for Rosario's Facebook records." (*Id.* at 21). Defendant's arguments will be discussed in turn.

### a. Particularity and Overbreadth

The Court will address both of Defendant's challenges to the sufficiency of the search warrant simultaneously. Defendant argues the "warrant is not particular as to the description of items to be searched or violation of the law[ and] it did not sufficiently guide law enforcement review of Mr. Rosario's Facebook account." (Doc. 37 at ¶ 10). According to Defendant, "[t]he affidavit supporting the search warrant also fails to establish probable cause to seize and search the broadly phrased 'Any and all text messages/posts, photos, video/audio messages, and phone calls made to/from Miguel Rosario . . . between 12/1/2018 through the present [June 27, 2019]," and, thus, the warrant is overbroad. (*Id.* at ¶ 13).

Pursuant to the Fourth Amendment, "'a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity.'" *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2019) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

> Particularity has three components: 'First a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (citations omitted). Ultimately, the particularity requirement intends that 'nothing is left to the discretion of the officer executing the warrant.' *Marron* [*v. United States*, 275 U.S. 192, 196 (1927)].

*United States v. Perez*, 712 F. App'x 136, 138-39 (2017).

The Third Circuit has noted that many courts "have struggled to adapt Fourth Amendment search doctrines designed for physical spaces to digital contexts." *Id.* at 139 (citing *Riley v. California*, 573 U.S. 373, 400 (2014)). In digital contexts, the Third Circuit explained, "the place to be searched encompasses much more information in a search of digital storage than in one of physical space, which appears to allow the plain view exception to undercut the warrant requirement." *Id.* However, "courts generally recognize that search warrants may authorize broad searches of electronic data on cellphones and computers, without violating the particularity requirement." *United States v. Reese*, 2021 WL 4429429, *5 (W.D.Pa. Sept. 27, 2021). "Courts are also mindful when it comes to electronic data, it is often impossible for law enforcement, beforehand, to detail precisely that will be found, and its location within the electronic device. *Id.* (citing *United States v. Bishop*, 910 F.3d 335, 337-38 (7th Cir. 2018)).

Here, Defendant's first challenge to the warrant is that "[T]rooper Bailey did not expressly incorporate the affidavit into the warrant, so this Court must only review the face of the warrant for particularity." (Doc. 38 at 13). This is incorrect. On the search warrant application, Judge Higgins clearly signed below the following statement:

> WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

8

(Doc. 38-1, Ex. 1 at 1); *see also United States v. Dewald*, 316 F.Supp.3d 413, 417, n.20

(M.D.Pa. 2019) ("Toward the bottom of the warrant, the issuing authority section explicitly

references the affidavit, stating that 'facts have been sworn to or affirmed before me by

written affidavit(s) attached hereto from which I have found probable cause . . .'"). A search

warrant may incorporate a supporting affidavit "so long as the warrant cross-references the

supporting document and the document accompanies the warrant." *United States v. Yusuf*,

461 F.3d 374, 394 (3d Cir. 2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 558 (2004)); *see*

*also Dewald*, 361 F.Supp.3d at 417. "Here, both the warrant and probable cause affidavit

are included in one, contiguous, [three-page] document titled Application for Search Warrant

and Authorization." *Dewald*, 361 F.Supp.3d at 417. Judge Higgins signed below the

affirmation on the Warrant application which references the probable cause affidavit and he

also signed the bottom of each page of Trooper Bailey's probable cause affidavit. (Doc. 38-

1, Ex. 1 at 1-3); *see Reese*, 2021 WL 4429429, at \*6 ("[T]he magistrate judge, in authorizing

the search warrant, expressly incorporated the affidavit as a basis for probable cause.").

These factors, with special emphasis placed on Judge Higgins' incorporation of the affidavit

by affirming that his probable cause determination relied on the attached affidavit, "suggest

that the affidavit is either part of the warrant itself, attached to it, or incorporated by

reference." *Dewald*, 315 F.Supp.3d at 417. Therefore, the Court may rely on Trooper

Bailey's affidavit of probable cause in evaluating the sufficiency of the search warrant.

Defendant contends that the search warrant authorized by Judge Higgins lacked particularity and was overly broad. (Doc. 38 at 14, 21). According to Defendant, "[t]he warrant for Mr. Rosario's Facebook records describes the items to be searched for an seized as: 'Any and all text messages/posts, photos, video/audio messages, and phone calls made to/from Miguel Rosario . . . through Facebook, Inc. accounts between 12/1/2018 through the present [June 27, 2019] related to this death investigation.'" (*Id.* at 14). He further argues that the warrant is overly broad because the "affidavit in support of the search warrant only supported the more limited search of Mr. Rosario's communications with the decedent." (*Id.* at 23). He contends that because the search warrant was overly broad and not sufficiently particularized, "Mr. Rosario now faces drug and firearm charges that would never have surfaced if not for this unlawful warrant." (*Id.* at 15).

Defendant, however, does not include the full warrant description of the items to be searched for and seized; rather, his Motion references an abbreviated version of the description and omits highly relevant limitations placed upon the data sought by the warrant. Contrary to Defendant's argument, the warrant does not request "'any and all' of Mr. Rosario's private communications." (Doc. 38 at 14, 22-23). After even a cursory review of the description of the items to be searched for a seized, it is clear that the warrant makes the specific request for "[a]ny and all text messages/poses, photos, video/audio messages, and phone calls made to/from Miguel ROSARIO (DOB: 05/28/86) and Nicholas CORREA (DOB: 10/05/90)" through identified Facebook accounts "between 12/01/18 to present

related to this death investigation." (Doc. 38-1, Ex. 1 at 1); *see Conley*, 4 F.3d at 1208

("[T]he use of the word 'all,' in and of itself, does not render a warrant a general warrant."

(citing *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)). The warrant requests

specific Facebook data between Defendant and Mr. Correa during a specific period of time.

*See Reese*, 2021 WL 4429429, at *6 (holding that a cell phone search warrant was

sufficiently particularized because the warrant and accompanying affidavit were

"contextually limited").

Defendant claims the warrant sought much more information than it actually does

because he cherry picks certain phrases from the warrant and ignores the limiting principles

contained therein. *See Conley*, 4 F.3d at 1208 ("Moreover, the phrases in a search warrant

must be read in context and not in isolation."); *United States v. Karrer*, 460 F. App'x 157,

161 (3d Cir. 2012) ("A warrant must be read as a whole, *see, e.g.,* [*United States v. Tracey*,

597, F.3d 140, 154 (3d Cir. 2010)], and a supporting affidavit likewise 'is to be read in its

entirety and in a common sense, nontechnical manner." (quoting *United States v.*

*Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011)); *Whitner*, 219 F.3d at 296 ("The [warrant's]

supporting affidavit must be read in its entirety and in a commonsense and nontechnical

manner."). As such, Defendant's argument on this point is wholly without merit and directly

contradicted by the terms of the search warrant.

Defendant makes a similarly baseless argument that the warrant does not clarify

what "death investigation" means. (Doc. 38 at 14-15). Because of this, Defendant argues,

Facebook lacked "content-based guidance" and "complied with this request by providing any and all text messages, photos, video/audio/ and phone calls made by Mr. Rosario for the seven-month period." (*Id.* at 14-15). Defendant again fails to consider the full context of the warrant and chooses to look at certain fragments in isolation. The search warrant does sufficiently describe the "death investigation" and includes the exact information Defendant accuses the warrant of omitting. (*See* Doc. 38 at 14 ("There is no clarification of what 'death investigation' meant, in other words who died or when it happened.")). Trooper Bailey's probable cause affidavit provides a detailed explanation of who died (Mr. Correa), when the death occurred (March 24, 2019), how the death occurred (mixed toxicity with cocaine, heroin, fentanyl, and prescription medications), and the facts that led Trooper Bailey's investigation into Mr. Correa's overdose death to Defendant and, more specifically, Defendant's Facebook accounts. (Doc. 38-1, Ex. 1 at 2-3). Contrary to Defendant's assertion, the warrant at issue did not lack "content-based guidance." *See Reese*, 2021 4429429, at *5 ("[W]hen the warrant and incorporated affidavit expressly reference the criminal offense that is the impetus for the warrant, the search warrant is accordingly limited to searching for evidence related to that offense, and is thus adequately particularized.").

Defendant next argues that "[p]olice could have made a narrower request limited to those communications between Mr. Rosario and the decedent with a time frame restricted from December 2018 to March 24, 2019." (Doc. 38 at 15). Defendant takes issue with the fact that of the 2,698 pages of Defendant's written Facebook communications, "only 90 of

those .pdf pages involved conversations with [Mr. Correa]." (*Id.*; *see generally* Facebook Data, Doc. 38-2, Ex. 2). According to Defendant, a narrower request with a shorter time frame "would have prevented the general disclosure and just the kind of rummaging that the particularity requirement seeks to avoid." (Doc. 38 at 15).

It is important to note that Defendant does not argue that the police should have made a narrower request or that they were constitutionally required to make a narrower request; instead, Defendant only argues that they "*could* have made a narrower request[.]" (*See id.* (emphasis added)). The absence of a temporal scope or a provision limiting the scope of the search to a particular time is not required for a warrant to be sufficiently particularized or not overbroad. *See United States v. Stimpson*, 2022 WL 784560, at *3 (E.D.Pa. March 15, 2022) ("The absence from the warrant of a provision limiting the search and seizure to documents pertaining to the time period of the scheme [does] not make the warrant 'so facially deficient' 'as to render official belief in its [legality] entirely unreasonable.'" (quoting *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 151 (3d Cir. 2002)); *see also Reese*, 2021 WL 4429429, at *5.

Here, the search warrant sought Facebook data from a limited time frame that directly related to the death investigation as described by Trooper Bailey's probable cause affidavit. *See Karrer*, 460 F. App'x at 161 (holding that the warrant was not overly broad because, *inter alia*, the warrant "sufficiently identified a time period during which the

13

suspected offenses occurred."). Trooper Bailey explained that he saw text messages between Defendant and Mr. Correa between December 2018 and Mr. Correa's death in March 2019 and that as of June 12, 2019, Defendant's Facebook account that he used to communicate with Mr. Correa had been deleted and reposted under a new account. (*Id.* at 2). Trooper Bailey stated that "[t]here is reason to believe that Miguel ROSARIO is conducting drug transactions through this updated Facebook Account." (*Id.* at 3). Accordingly, although a warrant is not required to have a specific time frame listed to be sufficiently particularized, the warrant here has a limited temporal scope that was sufficiently particularized to the investigation at issue.

Nor did the identified temporal scope make the warrant overly broad. "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized, but . . . authorizes the seizure of items as to which there is no probable cause." *Karrer*, 460 F. App'x at 162 (quoting *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 149); *Stimpson*, 2022 WL 784560 at *3 ("The absence of a limiting timeframe for each social media account does not invalidate the warrants."). Here, the Court finds no lack of probable cause to search and seize Defendant's Facebook account data within the limits described by the warrant. *See id.* Reading the warrant and Trooper Bailey's affidavit in a "common sense, nontechnical manner," as the Court must, both the warrant and the affidavit limited the search to specific Facebook accounts linked to Defendant, specific categories of evidence, including Facebook messages, posts, photos,

14

and videos, and limited the time frame of December 2018 to June 2019. (Doc. 38-1, Ex. 1 at 1-3); *see Dewald*, 361 F.Supp.3d at 419 ("Here, the warrant confined the officer's discretion by limiting their search to a specific place (Dewald's iPhone) and limiting their search to specific categories of evidence (images, text messages, social media data, and applications) related to specific statutory offenses (rape kidnapping, involuntary deviate sexual intercourse)."). There is no requirement that law enforcement must request only certain types of digital media to be searched in a drug investigation, and the warrant at issue was specific as the circumstances of the case permitted. *See Yusuf*, 461 F.3d at 395 ("[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given."); *Bishop*, 910 F.3d at 338 ("This warrant was specific as circumstances allowed. The Constitution does not require more."). The search warrant did not give police "unbridled discretion to conduct exploratory rummaging" through Defendant's Facebook accounts and thus cannot be invalidated as an overly broad, general warrant.

The warrant's limitations make it clear that this search warrant is not a "general warrant," as Defendant argues, and that the warrant is sufficiently particularized. Thus, the Court evidence seized as a result of the warrant will not be suppressed on these grounds.

### b. Franks *Hearing*

Defendant next alleges Trooper Bailey's probable cause "affidavit contains false

statements that should also be redacted and omissions that should be corrected following a

*Franks* hearing." (Doc. 38 at 16).

> In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that
>
> where the defendant makes a substantial preliminary showing that a false
> statement knowingly and intentionally, or with reckless disregard for the truth,
> was included by the affiant in the warrant affidavit, and if the allegedly false
> statement is necessary to the finding of probable cause, the Fourth Amendment
> requires that a hearing be held at the defendant's request.  In the event that at
> that hearing the allegation of perjury or reckless disregard is established by the
> defendant by a preponderance of the evidence, and, with the affidavit's false
> material set to one side, the affidavit's remaining content is insufficient to
> establish probable cause, the search warrant must be voided and the fruits of
> the search excluded to the same extent as if probable cause was lacking on
> the face of the affidavit.

*Franks*, 438 U.S. at 155-56.  Thus, *Franks* established a two-part test to allow a defendant

to overcome the presumption that an affidavit of probable cause supporting a search

warrant is valid.  *Yusuf*, 461 F.3d at 383.  First, a criminal defendant must make a

"substantial preliminary showing" to overcome the presumption that the affidavit supporting

the search warrant is valid.  *Id.*  Only if this initial showing is made is a defendant entitled to

a *Franks* hearing.  *Id.*

> *Franks* elucidated the initial showing required:
>
> To mandate an evidentiary hearing, the challenger's attack must be more than
> conclusory and must be supported by more than a mere desire to cross-
> examine.  There must be allegations of deliberate falsehood or of reckless
> disregard for the truth, and those allegations must be accompanied by an offer

16

of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient . . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72.  To overcome the presumption of validity, a defendant must do more than construct a self-serving statement which refutes the warrant affidavit.  *Id.* at 171; *see also United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984); *United States v. Strube*, 1997 WL 33482969, at *3 (M.D.Pa. July 24, 1997) (supporting statement from the defendant and his wife self-serving).

In determining whether a statement was recklessly made,

the rule is that an assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.  This definition provides two distinct ways in which conduct can be found reckless: either the affiant actually entertained serious doubts; or obvious reasons existed for him to do so, such that the finder of fact can infer a subjectively reckless state of mind.

*United States v. Brown*, 631 F.3d 638, 645 (3d Cir. 2011) (internal citations and quotation marks omitted).  Similarly, omissions are made with reckless disregard for the truth "if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'"  *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Defendant must allege the misstatement or omission was intentionally or recklessly made because "'negligence or innocent mistake [is] insufficient.'" *Yusuf*, 461 F.3d at 383 (quoting *Wilson*, 212 F.3d at 787). An omission or assertion is "material" when "probable cause does not exist under the corrected affidavit." *Id.*

In sum, a defendant must "allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information is insufficient to support a finding of probable cause." *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

### i. Misstatement

Here, Defendant takes issue with two portions of Trooper Bailey's affidavit of probable cause. Defendant first argues:

> The first false statement is as follows: "The victim exits the store and exchanges an item with Rosario." Trooper Bailey has conceded at hearings in the state case that this statement was false. At the state court suppression hearing held in Monroe County, Pennsylvania Trooper Bailey clarifies that he never saw an exchange.

(Doc. 38 at 17). Defendant contends that this portion of the affidavit "relates directly to proof of a drug transaction" and if this statement is omitted, "a much different picture of the meeting at the Wawa would have been presented to the magistrate." (*Id.* at 19-20). According to Defendant, "[n]o hand-to-hand exchange appears" on the Wawa surveillance footage, meaning that Trooper Bailey's statement that he observed an exchange between the men is false. (Doc. 38 at 9). Defendant further argues that at a suppression hearing in

18

a related state court proceeding, Trooper Bailey "conceded that he did not see an exchange after the decedent exited the Wawa." (*Id.*).  In support, Defendant references the following portion of Trooper Bailey's state court testimony:

> **Q.** Trooper [Bailey], when you saw Mr. Correa and Mr. Rosario come outside of the WaWa, they were obviously inside they came out, did you see a transaction at that point?
>
> **A.** No.
>
> **Q.** Is there a video showing them leaving the WaWa?
>
> **A.** There is video of them staying within the vehicle for about a minute, and then the video showing Mr. Rosario getting into a cab and leaving.
>
> **Q.** Okay.  So you never saw a transaction, is that fair?
>
> **A.** No.

(State Suppression Hearing Transcript, Doc. 38-4, Ex. 4 at 40:23-41:10).

> In response, the Government argues
>
> The defendant is wrong for at least three reasons.  First, when one reviews the context of Trooper Bailey's responses on cross-examination at prior Monroe County proceedings, it is clear that Trooper Bailey never specifically controverted the statement about his observation of an exchange between Nicholas and the defendant, nor was he ever specifically asked about what he observed at the precise time he states he made his observations in the affidavit. Second, the statement with which the defendant takes issue is not a false statement.  Third, the significance placed on the Wawa meeting between Nicholas and the defendant, in terms of probable cause for a Facebook warrant, is not as important as the defendant suggests.
> d

(Doc. 53 at 25-26).

Contrary to Defendant's argument, neither Trooper Bailey's testimony nor the Wawa

security footage disprove Trooper Bailey's description of events in his affidavit of probable

cause.  During the state court proceeding, as the Government points out, Defendant's

attorney focused his questions on the time Mr. Correa and Defendant exited the Wawa

together and did not specifically question Mr. Bailey about what he observed on the Wawa

security footage when Mr. Correa exited the Wawa for a second time by himself.  (*See* Doc.

38-4, Ex. 4 at 40:23-41:10; *see also* Doc. 53 at 26-29).  Moreover, on close review of that

exchange on cross-examination, Trooper Bailey replies "No" to a question that asks, "So

you never saw a transaction, *is that fair*?" (Doc. 38-4, Ex. 4 at 41:8-41:10 (emphasis

added)).  The Court takes Trooper Bailey's answer as one that is easily understood as a

response by Trooper Bailey that the questioner's assertion was not "fair."  Defendant treats

Trooper Bailey's answer as if it were to counsel's question with the "is it fair" interrogative

suffix severed from it.  That is, of course, not the case.

Trooper Bailey stated in his affidavit that he observed Mr. Correa "exchange[] an

item" with Defendant after he entered the store by himself, which occurred *after* Mr. Correa

and Defendant entered the store together, exited the store together, and sat inside Mr.

Correa's vehicle together.  (Doc. 38-1, Ex. 1 at 2; *See* Wawa Security Footage, Doc. 38-3,

Ex. 3 at 02:10-07:15).  Defendant's attorney chose not to ask Trooper Bailey about whether

he observed an exchange between Mr. Correa and Defendant after Mr. Correa entered the

Wawa for a second time by himself and then met with Defendant outside.  (Doc. 38-3, Ex. 3

20

at 07:20-08:56).  Accordingly, Trooper Bailey's testimony does not, as Defendant suggests, contradict the sequence of events described by Trooper Bailey in the affidavit of probable cause.

Furthermore, the Wawa security footage is not inconsistent with Trooper Bailey's affidavit, either.  As seen on the security footage, after Mr. Correa exits Wawa for a second time by himself, Defendant walks up to meet him and the two men step out of the security camera's view for roughly 10 seconds.  (*Id.* at 08:27-08:56).  During this time, Defendant and Mr. Correa are very close to each other and can be seen talking before and after they briefly step out of frame.  (*Id.*).  Because Defendant and Mr. Correa are so close together, this moment can reasonably be interpreted as Mr. Correa and Defendant "exchang[ing] an item."  The security footage does not negate Trooper Bailey's interpretation of the events described in his affidavit, nor does the footage make a "substantial preliminary showing" that Trooper Bailey's statement about an exchange between Defendant and Mr. Correa was false or made in reckless disregard of the truth.

Even if the statement about the exchange of an item is omitted from the affidavit, "there remains sufficient content in the warrant affidavit to support a finding of probable cause."  *Franks*, 438 U.S. at 156.  This affidavit was submitted in support of a search warrant for data from Defendant's two Facebook accounts, and Trooper Bailey's affidavit explains that he saw messages between Defendant and Mr. Correa on Mr. Correa's Facebook Messenger app that took place between December 2018 and March 2019 where

they discussed drug transactions. (Doc. 38-1, Ex. 1 at 2). Trooper Bailey stated that hours before Mr. Correa's death, Mr. Correa contacted Defendant via Facebook messenger before the two men met at Wawa. (*Id.*). Acknowledging that Trooper Bailey's affidavit supported a finding of probable cause for a search warrant for data from Defendant's two Facebook accounts, the Court finds that omitting the statement that asserts Trooper Bailey observed an exchange take place between Defendant and Mr. Correa would not have impacted Judge Higgins' finding of probable cause because there was significant information in the affidavit regarding the communications between Mr. Correa and Defendant via Facebook Messenger. *Yusuf*, 461 F.3d at 388-89 ("The disconcerting part of our analysis of the District Court's decision is that the ultimate determination of whether the assertions in paragraphs 23 and 24 were made with reckless disregard for the truth is inconsequential. The reformulated affidavit clearly establishes probable cause to authorize the search warrant. Even if this Court were to strike paragraphs 23 and 24 from the affidavit, there are sufficient factual allegations of money laundering to support a finding of probable cause to search the three Plaza Extra supermarkets for corporate business records."). As such, the statement about an alleged exchange between the two men was not a fact material to the probable cause determination.

For these reasons, the Court will deny Defendant's request for a *Franks* hearing due to an alleged misstatement in the affidavit of probable cause.

### *ii. Omission*

In addition to arguing that Trooper Bailey included a false statement in his affidavit,

Defendant alleges that Trooper Bailey omitted a material fact from his affidavit that requires

a *Franks* hearing.  According to Defendant,

> the omission in the warrant is that the messages reviewed were SMS
> messages but were being viewed with the Facebook Messenger app.  The
> messages were not on Facebook servers.  To state that these were simply
> "messages" leads a magistrate to believe that these messages would be
> recovered from data seized from Facebook.  The information about the type of
> message should have been added to inform the magistrate that these were
> SMS messages were stored on a cellphone and not on Facebook servers.

(Doc. 38 at 20).  There are two sentences in the affidavit that refer to messages.  The first

reads, "I observed text messages between the victim and Facebook Account 'Deuce

Rosario' through messenger."  (Doc. 38-1, Ex. 1 at 2).  The second sentences reads, "The

messages from CORREA related 'Yo, do you have that jaunt?', 'I got the cash on me.', 'Let

me know when you're ready.'"  (*Id.*).

Here, Defendant has not met his burden to make a "substantial preliminary showing"

that Trooper Bailey intentionally or in reckless disregard for the truth omitted the phrase

"SMS" before "messages," nor has Defendant made a "substantial preliminary showing" that

this alleged "omission" was material to Judge Higgins' probable cause determination.

Trooper Bailey does not specify whether the messages were SMS messages or Facebook

messages; instead, he used a more generic, broad term to describe what he observed.

(*See* Doc. 38-1, Ex. 1 at 2).  Defendant attempts to make very technical distinctions about

the type of messages sent between Defendant and Mr. Correa, but Trooper Bailey affirmed

that he observed the messages through Mr. Correa's Facebook Messenger app.  (*See* Doc.

38-1, Ex. 1 at 2).  Trooper Bailey's affidavit included information regarding Defendant and

Mr. Correa's Facebook Messenger communications, noting that they messaged each other

between December 2018 and March 2019 using Facebook Messenger and they messaged

each other and met at Wawa hours before Mr. Correa suffered a fatal overdose.  (*Id.*).

Trooper Bailey specifically states that "[p]rior to visiting the Wawa convenience store, [Mr.

Correa] contacted [Defendant] through Facebook Messenger."  (*Id.*).

Defendant has submitted no evidence that makes a "substantial preliminary

showing" that the messages at issue were actually SMS messages instead of Facebook

Messenger messages.  Defendant relies on "similarly worded 'messages'" between

Defendant and Mr. Correa and argues that a "*Franks* hearing must determine whether

Trooper Bailey observed these SMS messages as distinct from Facebook messages."

(Doc. 38 at 18).  These "similarly worded" SMS messages state, "I need those jawns" and

"cash in hand bro."  (SMS Messages, Doc. 38-5, Ex. 5 at 1).

The problem with Defendant's argument is that these messages are not the same as

the messages that Trooper Bailey included in his affidavit and, therefore, not evidence that

supports Defendant's theory that the messages observed by Trooper Bailey were SMS

messages.  Trooper Bailey used quotation marks in his affidavit, which indicates that he

copied the messages exactly as he observed them on Mr. Correa's phone, and simply

because there exist similar messages between Defendant and Mr. Correa does not call the veracity of Trooper Bailey's observations into question.  If anything, the similarity between the messages reinforces the notion that Defendant and Mr. Correa saw each other with some regularity for the same or similar purpose.

Finally, implicit in Defendant's argument are multiple assumptions about Mr. Correa's Facebook Messenger app settings and Trooper Bailey's knowledge of Facebook Messenger that Defendant fails to support with any evidence.  Defendant alleges that "SMS messages within the Facebook Messenger app *may* appear in a different color than messages sent using the message function within Facebook Messenger as noted in a June 2016 technology article[.]"  (Doc. 38 at 18-19 (emphasis added)).  At the outset, the use of the word "may" indicates that this statement is speculative and only an unsupported hypothesis that the messages in Mr. Correa's phone *may* have been a different color. Defendant has not submitted evidence to show that Mr. Correa actually used Facebook Messenger to send and receive SMS messages through the Facebook Messenger app.  If Mr. Correa used Facebook Messenger for SMS messaging, he would have had to enable this feature in his Facebook Messenger settings. [2]  Defendant has submitted no evidence to suggest Mr. Correa opted-in to this service.  Furthermore, nothing in Trooper Bailey's affidavit indicates that the messages he observed were a particular color, and Defendant

---

[2] *How do I use SMS messages in Messenger for my Android phone?*, FACEBOOK (last visited March 17, 2022) https://www.facebook.com/help/messenger-app/442105343709195/?cms_platform=android-app&helpref=platform_switcher (explaining that to set up SMS messaging in Facebook Messenger, users are required to go to enable this feature).

fails to present the Court with evidence that the messages were in fact a different color than other messages in Mr. Correa's Facebook Messenger app.

In sum, Defendant's argument that Trooper Bailey omitted the word "SMS" intentionally or in reckless disregard for the truth is nothing more than pure speculation because Defendant has submitted no evidence that indicates Mr. Correa used Facebook Messenger for SMS messages. Defendant cannot even state with certainty that the messages observed by Trooper Bailey were a different color, which allegedly would indicate that they were SMS messages, as opposed to Facebook Messenger messages. As such, Defendant's argument falls far short of the requisite standard for a *Franks* hearing and Defendant's request for such hearing will be denied. *See United States v. Long*, 2022 WL 375301, at *6 (D.N.J. Feb. 8, 2022) ("Long is not entitled to a *Franks* hearing because he fails to make a 'substantial preliminary showing' that the search warrant affidavits contained a false statement or relevant omissions, which were knowingly or recklessly made, and which were material to the finding of probable cause and, therefore, Long cannot overcome the general presumption of validity regarding the affidavits." (citing *Franks*, 438, U.S. at 171; *United States v. Aviles*, 938 F.3d 503, 508-09 (3d Cir. 2019); *Yusuf*, 461 F.3d at 383)).

## IV. CONCLUSION

For the aforementioned reasons, Defendant Rosario's Motion to Suppress Physical Evidence (Doc. 37) and the request for a *Franks* hearing contained therein will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge