THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,              :
                                       :
        v.                             :   3:21-CR-206
                                       :   (JUDGE MARIANI)
MIGUEL EDUARDO ROSARIO,                :
                                       :
              Defendant.               :


## MEMORANDUM OPINION

### I. INTRODUCTION

On July 27, 2021, Defendant Miguel Eduardo Rosario was charged in a five-count

indictment with one count of conspiracy to distribute controlled substances resulting in

serious bodily injury or death in violation of 21 U.S.C. § 846, two counts of distribution of a

controlled substance in violation of 21 U.S.C. § 841(a)(1), one count of possession of a

firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and one

count of firearms conspiracy in violation of 18 U.S.C. § 924(o).  (*See* Doc. 1).  Trial in this

matter is scheduled to commence on January 23, 2023.

Presently before the Court is the Government's Motion in Limine to Admit

Statements Excepted Under Hearsay Rules (Doc. 97).

### II. ANALYSIS

The Court notes at the outset that it exercises its discretion to rule *in limine* on

evidentiary issues "in appropriate cases."  *In re Japanese Elec. Prods. Antitrust Litig.*, 723

F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub ŋ͜om. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  Although "[t]he purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. . . [, t]he trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017) (internal citations omitted).  Further, while motions *in limine* may serve as a useful pretrial tool that enables a more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012) (citing *Japanese Elec. Prods.*, 723 F.2d at 260).  In addition, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).

It is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).  *See also*, *Luce v. United States*, 469 U.S. 38, 41-42 (1984) (". . . even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Here, the Government seeks admission at trial of statements made by Nicolas Correa, an unavailable witness, pursuant to Federal Rules of Evidence 804(b)(3) and 803(4).  The Court will address the statements in turn.

## A. Applicable Law

In determining the admissibility of the statements at issue, the Court must examine

the restrictions on such evidence set forth by the Constitution and the Federal Rules of

Evidence.

As explained by the Supreme Court:

> The Confrontation Clause of the Sixth Amendment provides: "In all criminal
> prosecutions, the accused shall enjoy the right ... to be confronted with the
> witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124
> S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held that this provision bars "admission
> of testimonial statements of a witness who did not appear at trial unless he was
> unavailable to testify, and the defendant had had a prior opportunity for cross-
> examination." A critical portion of this holding . . . is the phrase "testimonial
> statements." Only statements of this sort cause the declarant to be a "witness"
> within the meaning of the Confrontation Clause. *See id.*, at 51, 124 S.Ct. 1354.
> It is the testimonial character of the statement that separates it from other
> hearsay that, while subject to traditional limitations upon hearsay evidence, is
> not subject to the Confrontation Clause.

*Davis v. Washington*, 547 U.S. 813, 821 (2006). In clarifying its precedent, the Court in

*Davis* held that "[s]tatements are nontestimonial when made in the course of police

interrogation under circumstances objectively indicating that the primary purpose of the

interrogation is to enable police assistance to meet an ongoing emergency." *Id*. at 822.

However, these statements are testimonial "when the circumstances objectively indicate

that there is no such ongoing emergency, and that the primary purpose of the interrogation

is to establish or prove past events potentially relevant to later criminal prosecution." *Id*.

*See also*, *Michigan v. Bryant*, 562 U.S. 344, 358 (2011) ("the most important instances in

which the [Confrontation] Clause restricts the introduction of out-of-court statements are

3

those in which state actors are involved in a formal, out-of-court interrogation of a witness to

obtain evidence for trial.").

The Confrontation Clause inquiry is thus twofold:

First, a court should determine whether the contested statement by an out-of-court declarant qualifies as testimonial under *Davis* and its progeny. Second, the court should apply the appropriate safeguard. If the absent witness's statement is testimonial, then the Confrontation Clause requires "unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. If the statement is nontestimonial, then admissibility is governed *solely* by the rules of evidence.

*United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012) (emphasis in original).

Because "where nontestimonial hearsay is concerned, the Confrontation Clause has

no role to play in determining the admissibility of a declarant's statement", *Berrios*, 676 F.3d

at 126, a Court must apply the applicable Federal Rules of Evidence to determine the

admissibility of any non-testimonial statements.  Here, the Government relies upon Federal

Rules of Evidence 804(b)(3) and 803(4) in support of its request to admit certain statements

made by Nicolas Correa.

Pursuant to Rule 803(4):

The following [is] not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
   (4) Statement Made for Medical Diagnosis or Treatment. A statement that:
      (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and
      (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

Fed. R. Evid. 803(4).

Rule 804 provides exceptions to the rule against hearsay if the declarant is

unavailable as a witness.[1]  In relevant part, the Rule allows:

> (3) Statement Against Interest. A statement that:
> (A) a reasonable person in the declarant's position would have made only if
> the person believed it to be true because, when made, it was so contrary to
> the declarant's proprietary or pecuniary interest or had so great a tendency
> to invalidate the declarant's claim against someone else or to expose the
> declarant to civil or criminal liability; and
> (B) is supported by corroborating circumstances that clearly indicate its
> trustworthiness, if it is offered in a criminal case as one that tends to expose
> the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).  Thus, "[t]he question under Rule 804(b)(3) is always whether the

statement was sufficiently against the declarant's penal interest 'that a reasonable person in

the declarant's position would not have made the statement unless believing it to be true,'" a

question which "can only be answered in light of all the surrounding circumstances."

*Williamson v. United States*, 512 U.S. 594, 603-604 (1994); *see also, id.* at 603 ("whether a

statement is self-inculpatory or not can only be determined by viewing it in context. Even

statements that are on their face neutral may actually be against the declarant's interest.").

The requirement that the statement must be "supported by corroborating

circumstances that clearly indicate its trustworthiness", Fed. R. Evid. 804(b)(3)(B), "reflects

the concern that a third party with less risk of prosecution will fabricate a confession to

exculpate the guilty party."  *United States v. Caldwell*, 760 F.3d 267, 289 (3d Cir. 2014).

"Importantly, the rule 'does not require that *the information within the statement* be clearly

---

[1] Nicolas Correa is deceased and therefore unavailable to testify, Fed. R. Evid. 804(a)(4).

corroborated; it requires only that there be corroborating circumstances that clearly indicate the trustworthiness of *the statement itself*.'" *Id.* (quoting Weinstein's Federal Evidence § 804.06[5][b]) (first emphasis in *Weinstein*, second emphasis by Third Circuit). Examples of corroborating circumstances may include "the lack of a close relationship between declarant and the accused, the fact that the statement was voluntarily made after the declarant was advised of his *Miranda* rights, and the fact that the statement was not made to curry favor with the government." *Id*. at 289-290 (collecting cases; internal citations omitted).

Although the Third Circuit has recognized "the possibility that self-serving incriminating statements uttered by a non-testifying co-defendant may be inherently untrustworthy, where statements inculpate both the speaker and the defendant challenging their admission, the statements are admissible so long as they were 'self-inculpatory' and not simply self-serving attempts to deflect criminal liability." *Berrios*, 676 F.3d at 129 (internal citations and quotation marks omitted).

## B. Statements made to an EMS paramedic

The Government asserts that on September 14, 2018, Nicolas was involved in a traffic accident on Route 422 due to a drug overdose. (Doc. 98, at 2). EMS and police arrived at the scene and administered Narcan. Nicolas was then transported by ambulance to the hospital "where blood was drawn for purposes of criminal charges being filed." (*Id*. at 2-3). According to the Government, "[w]hile in transport to the Reading Hospital, Nicolas

6

admitted to the EMS paramedic in the process of rendering medical care to him that he

snorted a bag of heroin that morning prior to the accident." (*Id*. at 3).

Here, Rosario does not object "to the proposed statements" made by Nicolas to the

EMS paramedic (Doc. 123, at 1) and the Court agrees that pursuant to Rule 803(4) those

statements are not excluded by the rule against hearsay.

### C. Statements Made to West Reading Police Officer

Following the above-referenced incident on September 14, 2018, the Government

sets forth the following factual recitation:

> A West Reading police officer accompanied Nicolas to the hospital and blood
> was drawn at approximately 9:03 a.m. Nicolas was provided with PA DUI
> warming [*sic*] regarding blood testing and consented to the same. The blood
> was submitted for laboratory analysis. Lab results confirmed the presence of
> heroin, fentanyl, cocaine and methamphetamine. On December 12, 2018,
> Nicolas was charged with driving under the influence of a controlled substance.

> After providing Nicolas with PA DUI warnings regarding blood testing at the
> Reading Hospital, and after blood was drawn, the West Reading police officer
> asked Nicolas about how and why he overdosed. Nicolas responded by
> admitting that [he] snorted what he thought was cocaine when he awoke that
> morning; that he did a little "bump" to get going; and that he purchased the
> drugs in the city (Reading) but would not identify his source.

(Doc. 98, at 3). The Government asserts that Nicolas' statements to the police officer are

admissible under Rule 804(b)(3). (*Id*. at 3, 5-11).

Despite the Government's reliance on Rule 804(b)(3), it fails to offer any substantive

explanation for why the admission of Nicolas' statements would not violate the

Confrontation Clause. (*See* Doc. 98, at 10 (Government generally addressing Nicolas'

statements to police officer, brother, and friend, and stating that "*Crawford* confrontation attacks on these statements have no basis where the declarant could not have anticipated that the statement would be used against the accused in a future proceeding.  They are not testimonial, and consequently the Confrontation Clause does not apply.")).  The Court does not agree.

Here, the police officer accompanied Nicolas to the hospital and Nicolas was provided with a PA DUI warning at the hospital.  Only after the warning was provided and blood was drawn did the police officer ask Nicolas about "how and why" he overdosed.  The circumstances objectively indicate that there was no ongoing emergency where Nicolas was safely in the hospital, being treated, and not in any further immediate danger.  The police officer's questions, and Nicolas' responses thereto, specifically that (1) he snorted what he thought was cocaine that morning, and (2) that he purchased the drugs in Reading, serve no other purpose than to attempt to establish or prove past events potentially relevant to later criminal prosecution of Nicolas and/or his drug supplier.  As argued by the Government when explaining why the statements are admissible under Rule 804(b)(3), "by offering details about his possession of and use of controlled substances, as well as the fact that he purchased controlled substances 'in the City' before operating a motor vehicle, Nicolas 'provided self-inculpatory information' that might have enabled the authorities to better investigate his wrongdoing, *i.e.* driving under the influence of controlled substances and/or possession of controlled substances. In this way, Nicolas' admissions to the police office

were 'truly self-inculpatory.'" (Doc. 98, at 8-9) (*see also*, *id*. ("not only did Nicolas admit to

any number of Pennsylvania crimes when he spoke to the West Reading police officer (*e.g.*

DUI and possession of controlled substances), he did so under unambiguous police

investigative circumstances.")).  For these reasons, the Court finds that Nicolas' statements

to the police officer were testimonial.

Where Nicolas' statements are testimonial and he is deceased, there must have

been a prior opportunity for cross-examination in order to satisfy the requirements of the

Confrontation Clause. In the present case, it is undisputed that no such cross-examination

occurred and the opportunity to engage in this cross-examination was never available.  As

such, Nicolas' statements to the Reading police officer at the hospital on September 14,

2018 are inadmissible.

### D. Statements Made to Dimitri Correa and a Friend

The Government sets forth the following factual assertions with respect to the

anticipated testimony of Dmitri Correa and a friend of Nicolas as to what Nicolas said to

each of them:

> In or about January of 2019, Nicolas requested a ride to Reading from his
> residence in Monroe County from his brother, Dimitri Correa. Nicolas stated to
> Dimitri that he "owed his drug dealer money" from prior deals. Dimitri drove
> Nicolas to the area of 9th and Locust Street in Reading. He observed Nicolas
> enter the residence at that location, stay for approximately 15 minutes, and
> then exit with a quantity of Xanax, methamphetamine and cocaine. Dimitri was
> angered by Nicolas' conduct and essentially threw him out of the vehicle on the
> return trip home, only to return to where Nicolas stood on the side of the road
> to take him home. . .

> In the early morning hours of March 24, 2019, as Nicolas drove home (back to
> Monroe County) from the Wawa in Hamburg, Pennsylvania after meeting up
> with the defendant as video surveillance demonstrates, he spoke on the phone
> with one of his close friends. During the conversation with his friend, Nicolas
> reported that he obtained a quantity of cocaine and Percocet from his dealer
> and that he was having difficulty driving home. Nicolas asked his friend to
> continue to talk with him until he arrived home. . .

(Doc. 98, at 3-4).  The Government asserts that the statements by Nicolas, as testified to by

Dmitri and a friend, are admissible pursuant to Rule 804(b)(3) as statements against

interest.

Preliminarily, Defendant admits that the statements by Nicolas to his brother and

friend do not implicate the Confrontation Clause where they are not testimonial in nature.

(*See* Doc. 123, at 4).  The Court thus looks to Rule 804(b)(3) to determine the statements'

admissibility.

With respect to Dmitri Correa, the Government has provided insufficient information

for this Court to determine the content of the statements Nicolas purportedly made to his

brother that it will attempt to elicit at trial.  In addition to asserting that Nicolas told Dmitri that

he owed his drug dealer money from prior drug deals, the Government states that Dimitri

"observed Nicolas enter the residence at that location, stay for approximately 15 minutes,

and then exit with a quantity of Xanax, methamphetamine and cocaine".  It will be the

Government's burden at trial to show how Dimitri gained the knowledge that Nicolas, on

exiting the residence, did so with a quantity of Xanax, methamphetamine, and cocaine.  The

Court will thus defer ruling on the admissibility of Nicolas' statements to his brother in January of 2019.[2]

The Government further seeks admission of a friend's testimony that Nicolas reported to him on March 24, 2019 that he had obtained a quantity of cocaine and Percocet from his dealer and that he was having difficulty driving home and asked his friend to continue to talk with him until he arrived home.

Defendant acknowledges that the "statements [which] implicate Nick Correa in the crime of driving under the influence" are not self-serving. (Doc. 123, at 7). Defendant appears to concede that such statements are admissible. However, Defendant asserts that "where the drugs were purchased or who they were purchased from does not carry the same consequences to Nick Correa" and thus the "statements about getting cocaine and Percocets from a dealer must be excluded as they are general statements that may implicate a dealer but do little to implicate Nick Correa." (Doc. 123, at 7-8).

The Court disagrees with Defendant's characterization of the nature of the statements. Rather, statements made by Nicolas about having obtained cocaine and Percocet from a dealer are clearly against Nicolas' penal interest in that he is admitting to illegally purchasing two controlled substances, illegal possessing controlled substances,

---

[2] Assuming the testimony is as represented by the Government in its brief in support of its *in limine* motion, the Court would be inclined to allow Dmitri Correa's testimony as to Nicolas Correa's statements on the basis that it is not violative of the Confrontation Clause and admissible under Rule 804(b)(3) as declarations against penal interest by Nicolas Correa. However, out of abundance of caution, the Court will await the presentation of testimony and evidence.

11

and the consumption of such substances.  The consumption of the substances also forms, at least in part, the basis for his crime of driving under the influence.  In addition, the context and circumstances surrounding the statements support a finding that the statements are trustworthy.  Nicolas' statements to his friend are self-inculpatory and plainly not self-serving attempts to deflect criminal liability.  The surrounding circumstances further indicate trustworthiness where Nicolas' friend occupied a sufficient position of trust with Nicolas that Nicolas called his friend "in the early morning hours", asked his friend to stay on the phone with him, and in this context, explained the basis for his request.

### III. CONCLUSION

For the foregoing reasons, the Government's Motion in Limine to Admit Statements Excepted Under Hearsay Rules (Doc. 97) will be granted in part, denied in part, and reserved in part as set forth in this memorandum opinion and the separate accompanying Order.

Robert D. Mariani
United States District Judge